IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

      v.                                                         19-CR-73-FPG

TIMOTHY MYERS,
a/k/a CJ Mikowski,
a/k/a Patrick Mikowski,
a/k/a Colin James,

      Defendant.

---

## GOVERNMENT'S SENTENCING MEMORANDUM

The government submits this memorandum in support of a sentence of 420 months' imprisonment. As discussed below, a 420-month sentence appropriately accounts for "the nature and circumstances of [Myers'] offense[s]" and his "history and characteristics," 18 U.S.C. § 3553(a)(1), while also providing sufficiently just punishment that reflects the seriousness of Myers' crimes. *See* 18 U.S.C. § 3553(a)(2)(A). A 420-month sentence is also sufficient to deter others and protect the public. 18 U.S.C. § 3553(a)(2)(B)–(C).

**1. The Court should consider all of Myers' victims when weighing the § 3553(a) factors.**

In weighing the § 3553(a) factors, the Court may—and should—consider Myers' admission to coercing and attempting to coerce Victims 2, 3, 4, and 5 into producing sexually explicit images of themselves. *See* Dkt. 44 ¶ 8(e)-(h) (admission in plea); Dkt. 46 at 9:18-16:5 (sworn admission at plea hearing). Although Myers admitted producing and attempting to produce child pornography involving Victims 2-5, the PSR concludes that those Victims do

1

not fall within the Guidelines' narrow definition of "relevant conduct" for purposes of Guideline § 2G2.1. *See* U.S.S.G. § 1B1.1(a)(1)(A); *United States v. Wernick*, 691 F.3d 108, 113-117 (2d Cir. 2012) (discussing definition of "relevant conduct" in child pornography production cases). The Guidelines' approach to "relevant conduct" in this context is undoubtedly "academic and technical." *Id.* at 118. As a consequence, the Guidelines' failure to consider Victims 2 – 5 means that the Guidelines calculation "does not . . . engage with the seriousness and obvious materiality of [Myers'] persistent pattern of abuse of minors." *Id.*

The Court's assessment of the § 3553(a) factors must, however, take account of Myers' other victims, because the "conclusion that [Myers'] acts against young children are not technically 'relevant conduct' to the specific offense charged in Count [Four] does not imply that those acts are not highly relevant (in a non-technical sense) to the . . . [C]ourt's evaluation" of an appropriate sentence. *Id.* at 119. To the contrary, it is "manifestly true" that Myers' conduct involving other victims "can, and undoubtedly [should], be . . . considered . . . in assessing the factors relevant to sentencing under 18 U.S.C. § 3553(a)." *Id.* at 110.

For similar reasons, the Court should consider Myers' many other victims in other districts. *See* PSR ¶¶ 130-174. Doing so is consistent with the "longstanding principle" that it is "'[h]ighly relevant—if not essential" for a sentencing judge to have "the fullest information possible concerning the defendant's life and characteristics.'" *United States v. Watts*, 519 U.S. 148, 151-52 (1997) (per curiam) (citing *Williams v. New York*, 337 U.S. 241, 247 (1949)). This, of course, has long been understood to include "past criminal behavior which did not result in a conviction." *BMW of North Am. v. Gore*, 517 U.S. 559, 573 n. 19 (citing *Williams*, *supra*).

*See also Pepper v. United States*, 562 U.S. 476, 489 (2011) (noting that in 18 U.S.C. § 3661 and Guideline § 1B1.4, "[b]oth Congress and the Sentencing Commission . . . expressly preserved the traditional discretion of sentencing courts to 'conduct an inquiry broad in scope, largely unlimited . . . as to the kind of information they may consider'") (quoting *United States v. Tucker*, 404 U.S. 443, 446 (1972)) (brackets omitted).

To properly apply the § 3553(a) factors, the Court must therefore consider what, exactly, Myers is being sentenced for. He is not being sentenced only for enticing one victim into sending nude pictures and later bringing her to New Jersey to have sex with him. In addition to this, he is being sentenced for manipulating countless minor girls around the United States—some as young as 12—into sending him pornographic photos of themselves, and then extorting his victims into sending more photos when they had the courage to say "no." In other words, the "nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), involve far more than a single photo or a single victim. Instead, as the Guidelines recognize, Myers' offense involves a "pattern" of abusive conduct justifying a significant increase in the Guideline range. *See* U.S.S.G. § 4B1.5(b). As discussed below, the § 3553 factors similarly require a sentence at the high end of the Guideline range.

2. **The § 3553 factors require a 420-month sentence.**

Myers' repeated decision to take advantage of his victims' youthful lack of judgment is predatory and underscores why "just punishment" in this case requires a substantial sentence. 18 U.S.C. § 3553(a)(2)(A).

3

Myers' conversations with his victims show his sense of entitlement over their bodies. For example, he told Victim 1 that she could "mak[e] it up to [him]" by sending photos of her vagina. PSR ¶ 49. *See also id.* ¶ 48 (Myers stating to Victim 1 that "your pussy" "is my pussy now"). When Victim 2 told Myers that she was "insecure," he continued to pressure her into sending photos because (as Myers put it), "I showed u me." And he reminded Victim 3 that she "owe[d]" Myers "[p]ics for messing up and hanging out with other [people] over [Myers]." Indeed, when Victim 3 told Myers that she "want[ed] to keep that part of me secret," Myers told her "u do owe me like geez." *See also* PSR ¶ 153 (Myers telling Victim 21 "u owe me a pic").

What is more, Myers led his victims into believing that they were dating and then manipulated their "relationship," treating his victims' refusal to send more photos as evidence of infidelity that would justify blackmail. For example, he threatened Victim 2 that "[e]very picture" would be "up on" Facebook" if Victim 2 did not act in accordance with Myers' wishes, because—as Myers had led Victim 2 to believe—she was his girlfriend. PSR ¶ 66. *See* PSR ¶ 61 (Victim 2 reporting that Myers "continued to blackmail her to stay in their relationship"). When he got into an argument with Victim 4, he threatened: "U wanna be a biych [sic]. I'm posting ur pics u sent me on a [Facebook] page with ur #. Good job being a bitch to me and lying." And when he became angry with Victim 1, he asked on Facebook whether "[a]nyone want[s] special pictures" of Victim 1, PSR ¶ 42, and he later created an elaborate lie about being in a car accident in order to—as he admitted—"make [Victim 1] feel bad." PSR ¶ 40. The callousness shown over and over in Myers' threats demonstrates the need for a substantial sentence.

4

Making his crimes all the worse, Myers did this while being fully aware of how young his victims were. For example, early in his conversation with Victim 2, he confirmed whether she was in the ninth or tenth grade. When Victim 5 asked Myers how old he was—because "it kinda ma[d]e[] [her] nervous"—Myers told her that he was 18, to which Victim 5 responded, "It's ok, I'm turning 14." Myers' conversations also showed his intense sexual interest in his victims' youth—for example, after confirming that Victim 3 was 14 years old, he told her that "u want daddy's hard dick in ur 8th grade pussy." PSR ¶ 72; *id.* ¶ 76 (Myers telling Victim 3 to "Beg daddy to rape ur young little 14 yr old pussy"). This conduct was persistent. *See* PSR ¶ 153 (Myers calling Victim 21 "the hottest 7th grader").

All of this shows why a 420-month sentence is sufficient, but not greater than necessary to provide sufficiently just punishment for Myers' crimes. There is no question that the Guidelines recommend a lengthy sentence in this case. But that recommendation is largely a reflection of just how serious Myers' crimes are—after all, "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *New York v. Ferber*, 458 U.S. 747, 757 (1982). Taken together, the facts described in the PSR show why the Court should not exercise its authority to vary below the Guideline range.[1] There is nothing unusual about this case, such that a Guideline sentence is greater

---

[1] The government recognizes that the Second Circuit has encouraged district courts to vary downward in cases involving possession of child pornography. *See United States v. Dorvee*, 616 F.3d 174, 188 (2d Cir. 2010); *United States v. Jenkins*, 854 F.3d 181, 188 (2d Cir. 2017). The concerns that animate those decisions, however, do not apply to this case. The Guideline that drives Myers' sentencing range is § 2G2.1, which applies to cases involving production of child pornography. Thus, this case does not implicate Guideline § 2G2.2, which applies to cases involving possession, receipt, and distribution of child pornography. The Second Circuit's criticism of Guideline § 2G2.2 has no bearing on whether the Court should vary downward in this case. *See United States v. Brown*, 843 F.3d 74, 83-84 (2d Cir. 2016) (noting that the Second Circuit has "repeatedly upheld lengthy sentences in production cases post-*Dorvee*, recognizing a distinction between production and possession, particularly in production cases involving sexual contact with victims").

5

than necessary to accomplish the purposes of sentencing. Instead, as in many child pornography cases, Myers began by grooming his victims into believing that he was in a relationship with them, often taking advantage of his victims' youth and naiveté to do so. *See* PSR ¶ 58 (Victim 2 reporting that she sent Myers pictures "because she was naïve at the time" and because "she trusted 'Colin James'"). Once he had led his victims into believing that he was a trusted boyfriend, Myers began to demand what he truly wanted: child pornography—produced for him on demand—and virtual control over his victims' bodies. *See* PSR ¶ 153 (Myers telling Victim 21 that she "owe[d]" him a picture of her genitalia "[b]ecause it'll mean a lot to me n I'm in love wit u").

The fact that Myers' accomplished almost all his crimes from behind a computer screen, rather than in person, does not lessen the need for a Guideline sentence. The anonymity of the internet makes it easy for someone like Myers to treat his victims as disposable objects whose only purpose is to fulfill his pedophiliac interests. To Myers, nearly all his victims were nothing more than a Facebook account and a series of photos. But while they were largely interchangeable to Myers, each one of his victims is a real person, and many of them must live with the thought that their nude photos might be forever circulating on the internet. They must, in other words, live with the thought that an act of youthful indiscretion—encouraged by someone who took advantage of their poor judgment—could "haunt[] [them] in future years." Pub. L. 104-208, Div. A, Title I, § 101(a), 110 Stat. 3009-26 (Sept. 26, 1996). When a crime is so easy to commit without any immediate or obvious cost to the defendant, it becomes that much easier to coerce countless victims, and it becomes that much more important for a sentence to have a significant deterrent effect.

Finally, that Myers could engage in this conduct so regularly notwithstanding the obvious impact of his crimes shows that a Guideline sentence is necessary to protect the public. 18 U.S.C. § 3553(a)(2)(D). The number of Myers' victims shows that he was either oblivious to, or had total disregard for, the obvious effects that his crimes had on his victims. Either way, it shows that Myers is not dissuaded by the sorts of things, such as empathy or self-awareness, that might cause someone else to question his actions. Taken together with his criminal history, Myers' countless victims highlight his risk of reoffending, and the corresponding need for a significant term of imprisonment.

DATED:   Buffalo, New York
         February 25, 2021

Respectfully submitted,

JAMES P. KENNEDY, Jr.
United States Attorney

By:   **s/ CHARLES M. KRULY**
      CHARLES M. KRULY
      Assistant United States Attorney
      United States Attorney's Office
      Western District of New York
      138 Delaware Ave.
      Buffalo, New York 14202
      (716) 843-5838
      Charles.kruly@usdoj.gov