UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,
                *Plaintiff*,

vs.

TIMOTHY MYERS,              Case No: 19-CR-00073-FPG-MJR

                *Defendant.*

## DEFENDANT TIMOTHY MYERS'S SENTENCING MEMORANDUM TOGETHER WITH STATEMENT REGARDING SENTENCING FACTORS

DATED:  December 10, 2021        Respectfully submitted,

                                      LIPSITZ GREEN SCIME CAMBRIA, LLP
                                      JUSTIN D. GINTER, ESQ.
                                      *Attorney for Defendant, TIMOTHY MYERS*
                                      42 Delaware Avenue, Suite 120
                                      Buffalo, New York 14202-3901
                                      Phone:  (716) 849-1333
                                      Fax:     (716) 855-1580
                                      E-mail: jginter@lglaw.com


TO:    CHARLES KRULY, ESQ.
         ASSISTANT UNITED STATES ATTORNEY
         United States Attorney's Office
         Federal Centre
         138 Delaware Avenue
         Buffalo, NY 14202

# INTRODUCTION

On September 24, 2018, Timothy Myers was charged by way of criminal complaint. On April 23, 2019, Mr. Myers was indicted on the charges currently pending in front of Your Honor. Although, Mr. Myers was in custody at the time of his indictment and the government was aware of his custody status, Mr. Myers was not arraigned "without unnecessary delay" in an "adjacent district" as required under Rule 5 of the Federal Rules of Criminal Procedure.

On May 6, 2019, Mr. Myers is arrested and held on the Federal charges. On May 13, 2019, Mr. Myers ultimately makes his initial appearance in the Western District of New York and is ordered detained.

On September 2, 2020, Mr. Myers pled guilty before the Honorable Frank P. Geraci, Jr., Chief U.S. District Judge, to counts 4 and 28 of a 29 count indictment, charging him in count 4 with Production of Child Pornography in violation of 18 U.S.C. §§ 2251(a), 2251(e) and in count 28 with Cyberstalking in violation of 18 U.S.C. §§ 2261A(2)(B), 2261(b)(5).

The plea agreement provided, *inter alia*, that the parties agree, on a total Offense Level of 43, and a Criminal History Category of V, taking into account and statutory maximum penalty, his sentencing range would be a term of imprisonment of 420 months and a period of supervised release of 5 years to life.

However, in the Pre-Sentence Report ("PSR"), Probation calculated a total Offense Level of 42, meaning Mr. Myers's sentencing range would be a term of imprisonment of 360-420 months.

Importantly, while the government and the defense agreed to the Guideline calculations set forth in the agreement, the defendant reserved his right to recommend a sentence outside the

Sentencing Guidelines range.

In this memorandum, counsel addresses Mr. Myers's personal history, and the reasons for his crime of conviction. Counsel respectfully requests the Court to consider a variance from the Guideline range and sentence Mr. Myers to a non-Guideline sentence deemed appropriate by the Court.

## MR. MYERS'S PERSONAL HISTORY

Mr. Myers was born and raised in New Jersey to Joseph and Catherine Myers. He has a sister, Louise, and a brother Patrick. Mr. Myers has never been married and does not have any children. At the time of his arrest, he had been working in the landscaping business for several years.

Mr. Myers has accepted responsibility for his actions as reflected in his plea. He understands that his conduct has had a deep and likely lifelong impact on the victims involved in his case. Since his arrest and detention in New Jersey on related state charges, and his subsequent transfer to federal custody, he has had over 3 years to consider what he did and how he needs to move forward with his life.

During his time in custody he took an interest in Islam. He began studying with other inmates and eventually an advisor, Ms. Shazia Siddiqi, who visited the jail as a religious counselor. He converted to Islam over two years ago and now practices his faith daily, praying several times a day and studying the Quran and practicing with other inmates. He is deepening his faith and seeking to gain a greater understanding of himself and his relationship with Allah. His conversion to Islam has helped him begin to gain an understanding of his conduct and particularly of the impact it has had on the young women involved.

It would be easy to look at Mr. Myers's crime of conviction and judge him in a vacuum. Mr. Myers has not always had the easiest life but will be the first to tell you that his problems are no excuse for his actions here. We hope that Mr. Myers will not, in the future, be defined only by

this conduct. Rather, once Mr. Myers is given the opportunity to return to the community, he knows better than anyone that it will be up to him to show who he really is. He will be strictly supervised and he understands that any violation of release in the future will only lead him back to jail. Mr. Myers has advised that he is too old for this behavior and wants nothing to do with leading this type of life any further.  Mr. Myers is eager to engage in treatment and come out a better and stronger individual.

## SEX OFFENDER TREATMENT

In addition to his practice of Islam, Mr. Myers and I have discussed the Bureau of Prisons Sex Offender Programs.  He would like to be designated to a correctional facility that has these programs available and participate in the programs if possible.

Again understanding that he will be serving a lengthy prison sentence, Mr. Myers would like to make the best use of his time and enter into appropriate counseling.  He has been housed in multiple different jails during his detention, none of which had any of these kinds of programs available.

He wants to gain a better understanding of what led him to this conduct and how he can develop coping skills to recognize and address that behavior.

## MR. MYERS'S ACCEPTANCE OF RESPONSIBILTY

Mr. Myers fully acknowledges and accepts responsibility for his action that lead to his conviction.   Humbled  and  ashamed,  Mr.  Myers  deeply  regrets  his  actions.  Mr.  Myers understands that this was not a victimless crime, and accepts the consequences of his actions. He does not diminish the severity of what he has done, but hopes to move on in order to become a better citizen and better person. Mr. Myers is truly sorry for his actions, and is not proud of the decisions he has made or the effect they have had on his family and the victims.

**STATEMENT REGARDING SENTENCING FACTORS**

Pursuant to §5G1.3, the Court should reduce Mr. Myers's sentence to account for time already served in New Jersey state custody.

As a result of Mr. Myers's conduct with "Victim 17" in the "Additional Victims Unrelated to WDNY" portion of the PSR [p. 31, ¶ 143], he was arrested in New Jersey on state charges on 10/1/2018 and held in custody in New Jersey until his transfer to federal custody on May 6, 2019.  He accepted a plea to Endangering the Welfare of a Child, 3rd,  NJ Rev Stat § 2C:24-4 (2014) in Middlesex County, New Jersey, and is scheduled to be sentenced after he is sentenced on the instant matter to a 3 year flat sentence, to be served concurrently with his sentence on the instant matter.

 Because the Bureau of Prisons will not credit Mr. Myers for the time already served on his New Jersey State term, we respectfully request that pursuant to Guidelines § 5G1.3(b)(1), the Court adjust the federal sentence and reduce it by the amount of time Mr. Myers has already served in New Jersey State custody. Mr. Myers was in New Jersey State custody since his arrest on November 1, 2018, until his transfer to federal custody on May 6, 2019. Accordingly, the Court should adjust Mr. Myers's federal sentence under §5G1.3(b)(1), and reduce it by 6 months and 5 days.

Further, the defendant objects to the Probation department's application of USSG §3C1.1.  Assuming arguendo that Mr. Myers's actions "slowed" or "hampered"  the investigation, as stated in the PSR,  his actions did not materially affect the investigation as required for the application of USSG §3C1.1.

**MR. MYERS'S REQUEST FOR A NON-GUIDELINES SENTENCE**

As indicated above, Mr. Myers has shown remorse for his criminal acts.  He fully understands that that this was not a victimless crime and his actions can never be condoned.  It is doubtful that he will ever forget the damage that he has caused to many others.  We are not

5

asking the Court to overlook what Mr. Myers did in the past. However, we ask the Court to see the person he can be and his desire to receive the appropriate mental health treatment and be a productive member of society.

A district court is responsible for determining the applicable guidelines sentencing range pursuant to the United States Sentencing Guidelines. *See Gall v. United States*, 552 U.S. 38, 39 (2007). In *United States v. Booker*, the Supreme Court determined that the Guidelines are advisory. *See Booker,* 543 U.S. 220, 245-46 (2005). And although no longer mandatory, the Guidelines continue to function as "the starting point and the initial benchmark" for sentencing, *Gall*, 552 U.S. at 46, 49, and should be given "respectful consideration," *Kimbrough v. United States*, 552 U.S. 85, 101 (2007).

After consulting the Guidelines, a sentencing court performs an "individualized assessment" of the defendant and the facts of the case. *See Gall*, 552 U.S. at 50. This analysis is guided by "[r]easonableness" and an "individualized application of the statutory sentencing factors" listed in 18 USC § 3553(a). *See United States v. Dorvee*, 616 F.3d 174, 184 (2d Cir. 2010) (*citing Gall*, 552 U.S. at 46-47); *Kimbrough*, 552 U.S. at 113 (Scalia, J., concurring) ("[T]he district court is free to make its own reasonable application of the § 3553(a) factors, ***and to reject (after due consideration) the advice of the Guidelines***.) (emphasis added).

Pursuant to the "parsimony clause" in section 3553(a), a court is to "impose a sentence sufficient, but not greater than necessary to comply with the specific purposes set forth" in § 3553. *See* 18 U.S.C. § 3553(a); *see also Dorvee*, 616 F.3d at 182. Section 3553(a) includes a list of "factors" a court is to consider when determining the appropriate sentence:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>    (A) to reflect the seriousness of the offense, to promote respect for the law; and to provide just punishment for the offense;

6

|      |       |                                                                                                                                                   |
|------|-------|---------------------------------------------------------------------------------------------------------------------------------------------------|
|      | (B)   | to afford adequate deterrence to criminal conduct;                                                                                                |
|      | (C)   | to protect the public from further crimes of the defendant; and                                                                                   |
|      | (D)   | to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; |
| (3)  |       | the kinds of sentences available;                                                                                                                 |
| (4)  |       | the kinds of sentence and the sentencing range established [by the Guidelines;]                                                                   |
| (5)  |       | any pertinent policy statements [issued by the Sentencing Commission;]                                                                            |
| (6)  |       | he need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and        |
| (7)  |       | the need to provide restitution to any victims of the offense.                                                                                    |

18 U.S.C. § 3553(a).

*See* 18 U.S.C. § 3553(a).  Finally, a sentencing court need not follow the sentencing range suggested by the Guidelines if it disagrees with a relevant policy reflected in the Guidelines.  *See Spears v. United States*, 555 U.S. 261, 264 (2009) (stating that "the point of *Kimbrough*" was to "recogni[ze] [the] district courts' authority to vary from the crack cocaine Guidelines based on policy disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case").  This authority is at its greatest when the offense Guideline at issue is not the product of the Sentencing Commission's empirical analysis and technical expertise.  Since the guidelines for child pornography offenses were amended at the direction of Congress rather than through the Sentencing Commission's empirical approach, this Court has ample authority to exercise its sound discretion.  *See Dorvee*, 616 F.3d at 184-86.

When the Court applies the 3553(a) factors to the facts and circumstances of this particular case, it is not unreasonable to conclude that the suggested guideline sentence is greater than is necessary to realize all of the 3553(a) factors.

7

## CONCLUSION

We do not in any way want to diminish the gravity of Mr. Myers's conduct. It is inexcusable and indefeasible. Sentenced to the custody of the Bureau of Prisons, he will be placed in a facility carefully monitored with mandated restrictions for sexual offenders. When released, (whenever that may be), Mr. Myers will be on Supervised Release requiring him to comply with special conditions of sexual offender probation. In addition, he will be registered as a sexual offender.

Mr. Myers's Plea Agreement allows consideration of a non-guideline sentence. Respectfully, the undersigned asks the Court to use its discretionary sentencing authority and sentence him accordingly.

Respectfully submitted,

/s/Justin D. Ginter
JUSTIN D. GINTER, ESQ.